**Martha Frances FRANKS et al., Plaintiffs,**

**Martha Ann Thweatt et al., Plaintiffs-Movant Appellants,**

v.

**The KROGER COMPANY, Defendant-Appellee.**

No. 79–1009.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1980.

Decided June 1, 1981.

As Amended June 29, 1981.

Rehearing and Rehearing En Banc Denied Sept. 9, 1981.

G. Philip Arnold, Thomas M. Daniel, Ratner, Sugarmon, Lucas & Henderson, Memphis, Tenn., for plaintiffs-movant appellants.

J. Mack Swigert, L. J. Barty, Taft, Stettinius & Hollister, James S. Johns, Cincinnati, Ohio, J. Edward Wise, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for defendant-appellee.

Before KEITH and MERRITT, Circuit Judges and GUY, District Judge.*

KEITH, Circuit Judge.

This appeal presents a challenge to the district court's approval of a settlement agreement between the defendant, The Kroger Company, and the class represented by Martha Frances Franks and the other named plaintiffs. For the reasons discussed below, we reverse the district court's approval of the settlement agreement and remand for proceedings consistent with this opinion.

## I.

In January 1976, the named plaintiffs filed this action in the Western District of Tennessee alleging that the Kroger Company had discriminated against them, on the basis of their sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This action was filed on behalf of:

> black, female, and Spanish-surnamed persons who are now, have been or might have been employees of the Kroger Company, and who sought, might have sought or might seek employment and promotion by the Defendant Kroger Company and who are, have been, might have been or might be adversely affected because of their race, national origin and/or sex by defendant's discriminatory hiring, training and promotion practices.

Specifically, the named-plaintiff claimed that Kroger maintained a pattern of hiring, promotion, training and placement which restricted all female, Spanish-surnamed and black employees to clerical, custodial, physical labor and non-management positions. The plaintiffs alleged that Kroger's male Caucasian employees were trained and placed "so as to be able to transfer throughout the corporate structure at will."

On July 21, 1976, the district court certified the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure. It defined the class as including "all females within the geographical limits of the Delta Marketing Area of the defendant ... who seek or have sought employment training or promotion to management positions in the Kroger Company." Following extensive discovery, the parties filed a proposed settlement agreement and, as part of the agreement, filed a joint motion for redefinition of the class. The agreement provided that the class members would pursue their remedies against the company individually after approval of the settlement. Under this procedure, the claimants would have 15 days to file such a claim. The magistrate of the district court would then try all the individual cases, and the district court would hear appeals. However, the agreement also included an express waiver of any right to appeal the rulings of the district court.

Initially the district court responded to the parties' settlement proposal by granting the joint motion for class redefinition. It redefined the class as including only those "female employees of the Memphis office of the Delta Marketing Area, who seek or have sought at any time since 180 days prior to the filing of a charge with the Equal Employment Opportunity Commission by the Plaintiff Martha Frances Frank."

Later, a hearing was set to consider objections to the proposed settlement. Notice was sent to all female employees in the Memphis Office of the Kroger Delta Marketing Area and a substantial number of those employees appeared at the hearing to voice their objections. As a result, the district court decided not to approve the proposed settlement agreement. The court specifically rejected the parties' contention that the procedures in the settlement agreement which provided for the adjudication of individual claims of discrimination were fair and adequate. It noted that the "joint proposal is not a settlement but a mere postponement of disputed issues in this case and

* Hon. Ralph B. Guy, Jr., Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

that the rights of the claimants which are postponed will be subjected to more stringent requirements if the settlement is approved." Accordingly, the court rescinded its previous order which had initially granted the joint motion for class redefinition, and defined the class as consisting:

> of all females who have been discriminated against on the basis of their sex within 180 days prior to the filing of a charge with the EEOC by the plaintiff Martha Frances Franks in the area and manner hereinafter set forth. First, all females within the geographical limits of the Delta Marketing Area of the Kroger Company who seek or have sought employment to supervisory or management positions with Kroger Company and all female employees who seek or have sought training or promotion to said supervisory or management positions. Second, all female employees in the Memphis office of the Delta Marketing Area of the Kroger Company who seek or have sought job transfers, training or promotion to other jobs with the Kroger Company.

The district court also found that further discovery was warranted as to the issues raised by the objections at the hearing, and allowed 60 days for supplemental discovery.

After conducting additional discovery, the parties agreed to a revised settlement proposal. Again, they filed a joint motion seeking approval of the agreement and a joint motion for redefinition of the class. Several of the class members who objected at the initial hearing, filed a motion to intervene on the grounds that the class representatives, by agreeing to the revised proposed settlement, had not adequately represented their interests.

Under the revised agreement, the named-plaintiffs would receive monetary and/or employment considerations in return for relinquishing all claims against the company.[1] Class relief would consist of the following: (1) the company's agreement to provide notice to its employees of all management vacancies; (2) the company's agreement to follow the general hiring procedures provided for in the agreement;[2] (3) the company's agreement to provide notice, through meetings and postings, of vacancies in its management training program; and (4) the company's agreement to promulgate a "Fair Employment Policy" and to post a copy of its policy on the bulletin boards of its stores. Under the agreement, the claims of individual class members against the company would be resolved through the following procedure:

> (i) Within fifteen (15) days after the approval of the Settlement by the Court, Kroger would post a notice on the company bulletin boards in each store, office and warehouse of the Delta Marketing Area, which

---

1. Under the revised proposal, the named plaintiffs would receive the following as consideration for releasing their claims against Kroger: Martha Frances Frank—$10,000 lump sum payment, an appointment to a company management training program at a $13,100 annual salary, and subsequent appointment to a management position with Kroger at a $16,100 annual salary; and Nina Diaz James—$500 lump sum payment.

2. The hiring clause in the proposed Settlement Agreement read as follows:

 The Personnel Department will review the qualifications of those interested in the opening. Weight will be given to previous performance ratings, skills possessed, and previous work experience. Employees interested in the opening will be interviewed. A decision will then be made as to which candidate, if any, should be offered the job.

 In filling any vacancy the first consideration will be qualifications. The second consideration will be whether the job is a promotional opportunity for a candidate. When the first two considerations appear equal, the candidate in the department where the opening exists will receive the job. The transfer of employees to jobs in the same or lower job levels will be avoided, if possible. Where qualifications are equal employee candidates will be given preference over non-employee candidates.

 Those employees who are interested but who do not receive the job will be informed of the reasons that they were not accepted by the Personnel Department.

 All job opening notices shall be kept on file in a loose leaf binder in the Personnel Department for a period of not less than two (2) years from the date of posting and the file of such notices shall be available for information upon request of an employee.

would direct class members who claim to have been discriminated against between August 23, 1974 and the date of the Settlement Agreement to file a claim in writing with Kroger within thirty (30) days after the notice was posted.

(ii) The written claims would have to specify the following items: (1) the particular training or promotion to which the class member claimed to have been wrongfully denied; (2) the approximate date of the request for the training or promotion and the name of the person to whom the request was made; (3) the approximate date of denial, the name of the person who denied the request and any reasons given for the denial; (4) the name of the employee awarded the training or promotion in question, and the approximate date of the award; (5) the class member's basis for claiming that she was qualified for the training or promotion in question; (6) the approximate amount of back pay or other relief sought. Additionally, claimants in the Memphis office of the Delta Marketing Area, 2330 Frisco Avenue, Memphis, Tennessee, who claimed to have been discriminated against with respect to promotion to non-management jobs would have to state that the position sought was vacant and that the vacant position was at a higher level bracket than the claimant's position.

(iii) Kroger would have 30 days to respond in writing to any such claim by accepting or rejecting the claim, or by attempting to reach a settlement with the claimant. Absent appeal from Kroger's response within the time allocated, Kroger's response shall become final and binding upon the class member.

(iv) Each class member would have 15 days after receipt of Kroger's response to appeal to the Magistrate of the U.S. District Court for the Western District of Tennessee, who

would hear the appeal pursuant to the procedure set forth below. The appeal would be in writing to the attention of the Magistrate. The Magistrate would recommend findings and conclusions, including remedy where appropriate, to the Court.

(v) Either party would have 15 days from receipt of the Magistrate's decision to appeal that decision and recommendation to the district court by filing a notice of appeal with the court with copy to the opposing party.

The following procedure shall apply to all hearings conducted pursuant to the Settlement Agreement. The parties to the hearing of any individual claim by a class member would be that class member and Kroger. Each party could be represented by counsel of its choosing.

(i) All parties, members of the class, and their counsel would be entitled to discovery prior to commencement of a hearing. All questions concerning discovery which could not be resolved by the parties involved would be submitted to the Magistrate for determination.

(ii) All witnesses who testify at the hearing would be sworn or affirmed.

(iii) The order of presentation of the hearing would, unless otherwise directed by the Magistrate, be as follows:

After preliminary matters, the class member would make an opening statement, and thereafter the Company would make an opening statement. The class member would then present her evidence. At the close of the Company's evidence, the class member could present rebuttal evidence, following which the Company would present surrebuttal evidence.

(iv) All witnesses could be cross-examined and could be re-examined by the parties, and by the Magistrate.

(v) All questions of procedure and evidence not covered herein would be determined by the Magistrate, applying the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

(vi) It would be the burden of the class member to make an evidentiary showing that she was a member of the class as defined by the Court; that she made a request for the claimed training or promotion; that her request was denied; that such denial occurred between August 23, 1974 and the date of this Settlement Agreement; that she met the minimum qualifications for such training or promotion; and the damage which she allegedly suffered. Additionally, those class members in the Memphis Office of the Delta Marketing Area, 2330 Frisco Avenue, Memphis, Tennessee, who claim to have been discriminated against with respect to promotion to non-management jobs would have to show that the position sought was vacant and that the vacant position was at a higher bracket than claimant's position. It would then be the burden of the Company to make an evidentiary showing that the reason for the denial of the claimed training or promotion was other than the class member's sex.

(vii) At the conclusion of each hearing, the matter would be submitted to the Magistrate for determination. Briefs could be submitted within ten (10) days by any party upon request.

(viii) With respect to any claim which was sustained, the Magistrate would have the power to recommend any one or more of the following: (1) to make an award ordering that the class member be awarded training or the next available promotion in the area in which the class member was denied training or promotion; (2) to make an award of back pay; and (3) attorneys' fees and costs.

(ix) All periods of limitations applicable under federal or state law would be applied by the Magistrate, including limitations on back pay specified in Title VII.

(x) In the event either party appealed the recommended decision of the Magistrate, the Magistrate's decision and the record made during the hearing would be transmitted to the district court. The appealing party would have 20 days following the filing of the notice to appeal in which to submit to the district court written objections to the findings of the Magistrate. The other party would then have 20 days to respond to said objections. Either party shall have a right to appeal the district court's decision, as provided by law.

The Company also agreed to pay in attorney's fees "one-half of any sum . . . approved by the court, which sum to be taxed to the defendant shall not exceed the sum of $37,500, and upon dismissal of the complaint will pay to such counsel the remaining one-half of that sum as consideration for services rendered by them to the plaintiffs as to the date of such dismissal including all expenses."

After conducting a hearing in which the objectors made their views known, the district court granted the parties' joint motion for approval of the proposed settlement agreement and dismissed the objectors' motion to intervene. The court also redefined the class as follows:

The class consists of all females who since August 23, 1974, have been discriminated against by the defendant, The Kroger Company, on the basis of their sex in the area of and in the manner hereinafter set forth:

First, all female employees of the Delta Marketing Area of The Kroger Company [this excludes female employees in the Memphis Bakery, the Memphis Meat Plant, and the Hope, Arkansas non-retail facilities] who seek or have sought train-

ing for or promotion to a management position with The Kroger Company.

Second, all female employees of the Delta Marketing Area in the Memphis, Tennessee Office of the Delta Marketing Area of The Kroger Company at 2330 Frisco Avenue, Memphis, Tennessee, who seek or have sought job transfers, training for or promotion to other jobs within The Kroger Company.

On appeal, the objector's challenge the revised Settlement Agreement on both procedural and substantive grounds. They also contend that the district court erred in denying their motion to intervene.

## II.

The first issue presented by this intriguing case is whether the district court erred by not sending actual notice to each class member before conducting the objectors' hearing. Rule 23(e) of the Federal Rules of Civil Procedure requires that notice of a proposed dismissal or compromise be given to all members of a class before a Settlement Agreement is approved by a district court.[3] In this case, the district court ordered that the following notice of the settlement hearing be given: (1) posting 8″ × 11″ notices on the bulletin boards of each store, office and warehouse of Kroger's Delta Marketing Area; (2) publication of notices in a newspaper of general circulation located in Memphis, Tennessee; Jackson, Mississippi; and Little Rock, Arkansas; and (3) personal notice sent by plaintiffs' attorney to 17 or 18 individual class members. Citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974), the appellants contend that the notice ordered by the district court was inadequate because it was not the best notice practicable under the circumstances. They would have this court apply the actual notice requirement to the settlement hearing of the Rule

23(b)(2) class action suit before us. Further, the appellants charge that not only did the district court fail to order actual notice before conducting the hearing on the proposed settlement, but it never determined the actual identity or numbers of class members represented by the named plaintiffs.

We find the appellants' position on this issue unpersuasive. In *Mullane v. Central Hanover Bank & Trust Co.*, *supra*, a case involving a petition for acceptance of an accounting by a trustee of a common trust fund, the Supreme Court held that notice by publication was not adequate under the circumstances, and that due process considerations required individual notice to each beneficiary of the trust. Twenty-four years later in *Eisen v. Carlisle and Jacqueline*, *supra*, the Court held that individual notice to each class member in a Rule 23(b)(3) class action is required by the Federal Rules of Civil Procedure. The *Mullane* decision established a constitutional standard of "reasonable" notice, but this constitutional standard should not be confused with the "more rigorous rule of individual notice which the Supreme Court found required by Rule 23 in *Eisen v. Carlisle and Jacqueline*." See *Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1416 n.40 (1976). *Eisen* dealt solely with the notice requirements of 23(b)(3) class actions, but on the basis of considerations of due process, appellants would have us apply the more rigorous individual notice requirement to the Rule 23(b)(2) class action settlement in the instant case. It is clear to this court, however, that Rule 23(e) rather than Rule 23(b)(3) governs here. Rule 23(e) specifically provides that "notice of the proposed dismissal or compromise shall be given . . . in such a manner as the court directs." It is well settled that this language provides the courts with "virtually complete discretion" in selecting the kind of notice to employ in order to inform class members of a

---

**3.** Rule 23(e) reads as follows:

(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of

the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

settlement hearing. *See* Wright & Miller,: Federal Practice and Procedure: Civil § 1979. *See also Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975), cert. denied, 423 U.S. 864, (1975), *Cranston v. Hardin*, 504 F.2d 566 (2d Cir. 1974), and *Greenfield v. Village Industries, Inc.*, 483 F.2d 823 (3d Cir. 1973). We believe, upon a review of the record in this case, that the district court did not abuse its discretion by declining to order individual notice before conducting the hearing. It may be, as appellants argue, that individual notice would have been more effective in this instance, but it is our view that notice by publication, by posting, and by selected individual delivery was reasonable in the circumstances underlying this case. *See* Manual for Complex Litigation, Part I, § 1.45 n.96. Therefore, we conclude that the district court did not abuse its discretion by declining to order individual notice. Since the notice ordered by the district court was reasonable under the circumstances, due process requirements were met.

## III.

The second issue presented on appeal is whether the district court improperly defined the class in this case. As previously noted, the district court issued four class action definition orders in the course of the proceedings below.[4] The appellants contend that the initial class definition order and the subsequent revisions were improper because they were all issued without a factual basis appearing in the record and without findings of fact being made as required by Rule 52 of the Federal Rules of Civil Procedure.[5] We cannot agree.

Class certification and redefinition is based on Rule 23(c)(1) of the Federal Rules of Civil Procedure, which states:

As soon as practicable after the commencement of an action brought by a class action, the court shall determine by order whether it is to be so maintained. An order under this sub-division may be conditional, and be altered or amended before the decision on the merits.

 It is clear from the plain language of the Rule that an *evidentiary hearing* is not required before class determination or redetermination. *See King v. Gulf Oil Co.*, 581 F.2d 1184 (5th Cir. 1978). Indeed, there is authority indicating that "[o]n balance, foregoing an evidentiary hearing except in exceptional cases represents the better solution ... inasmuch as the Rule 23(c)(1) decision can be rendered in most cases without harassing expense and publicity adverse to defendant." Wright and Miller, *supra*, at § 1785. In this case, we believe that it was

4. The district court issued its initial order certifying the class on July 21, 1976. It first redefined the class on August 26, 1977. Subsequently, it redefined the class on January 13, 1978, and then again on August 18, 1978.

5. Rule 52 reads as follows:
(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If

an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).
(b) Amendment. Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment.

not an abuse of discretion for the district court to redefine the class without conducting an evidentiary hearing. In each instance the court redefined the class only after giving each counsel of record an opportunity to be heard on the issue. In fact, before issuing the final redefinition order, the court heard the following explanation from plaintiffs' attorney:

When this case began we were asking for certification of a very broad class which included females, Spanish surnamed people and blacks, and that we were asking for certification both for persons who were employed, had been employed, who had applied, or who might hereafter be employed. That certification was cut back originally to strictly females and our discovery has proceeded on that basis. Now, with regard to the question of applications which Mr. Arnold referred to, this is part of the history of the case which he cannot know, but we had produced the file of applications at Kroger Company for management positions, and in two and a half years we have not been able to come up with a single person who fits into that portion of our original request for certification. For that reason, and that reason only, we dropped it from our request to amend the definition of the class, because we have no one in that position and there is no one of whom we are aware to be notified nor whom we could discover in their files.

As defendant points out in its brief, the appellants and their attorney were present in the courtroom when this representation of fact was made to the court, yet no one challenged the accuracy of the statement. Therefore, we are not persuaded that the district court abused its discretion when it ordered class redefinition based on the information that was before the court.

■ We also find unpersuasive appellants' contention that findings of fact pursuant to Rule 52 are necessary to support a class redefinition order. Again, the plain language of the Rule belies appellants' contention. Rule 52 provides in pertinent part that "(f)indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or *any other motion* except as provided in Rule 41(b)." (Emphasis added). Therefore, as the Third Circuit in *Interspace Corp. v. Philadelphia*, 438 F.2d 401, 404 (3d Cir. 1971), has held, Rule 23(c)(1) does not require findings of fact pursuant to Rule 52 before the redefinition of a class takes place. *See also Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir. 1976).

## IV.

The next issue presented on appeal is the appellants' substantive challenge to the district court's approval of the Settlement Agreement. Appellants contend that the Agreement, which was finally approved by the district court, is unfair and unreasonable, and is not in the best interest of those affected by it. For the reasons discussed below, we agree.

■ This court recognizes that the law generally favors and encourages the settlement of class actions. *See, e. g., Airline Stewards and Stewardesses Association v. American Airlines, Inc.*, 573 F.2d 960, 963 (7th Cir. 1978), *cert. denied*, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1979); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979); and *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). *See also* Schlei-Grossman, Employment Discrimination Law 1127 (1976). Moreover, it is recognized that when a Settlement Agreement has been approved by a district court as fair, adequate and reasonable, this decision will not be reversed unless there has been "plain error or an abuse of discretion or if the court acted arbitrarily or failed to satisfy itself that the settlement was equitable and in the public interest." *Metropolitan Housing Development v. Village of Arlington Heights*, 616 F.2d 1006, 1015 (7th Cir. 1980). *See also United States v. City of Miami*, 614 F.2d 1322, 1334–5 (5th Cir. 1980). However, we are persuaded by appellants that the final Settlement Agreement in this case was so against the interest of the class

members that its approval by the district court constituted plain error.

As previously discussed, the named plaintiff, Martha Franks, received $10,000 and a promotion, the named plaintiff Nina Diaz James received $500 and counsel of record received $47,000 in attorneys fees, while the class members in this suit received only Kroger's general agreement to treat its employees equally and a chance to present individual claims to the United States Magistrate in accordance with procedure described *supra.* It is clear to us that under the individual claims procedure provided for in the agreement the members of the class are no better off than if they had brought their actions individually. In fact, appellants' contention that they are actually in a worse position under the settlement than they would have been if they had brought individual Title VII cases has merit. Under the settlement, a class member has to make an "evidentiary showing that she is a member of the class as defined by the court..." Since the district court finally redefined the class as "all females who since August 23, 1974 have been discriminated against by the defendant, The Kroger Company, on the basis of their sex...," the class members have the burden of proving that they have been specifically discriminated against by the company. This is a greater burden than the claimants would have had to meet in order to litigate individual Title VII claims, since *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), requires only that a plaintiff in a Title VII suit demonstrate: (1) that she is a minority or a woman, (2) that she applied for employment and was qualified for the job, (3) that she was rejected, and (4) that the employer contin-

ued to seek applications after her rejection. This showing creates a *prima facie* case of discrimination under Title VII. *See Grano v. Department of Development,* 637 F.2d 1073, (6th Cir. 1980). The company contends that the agreement should be approved because it mirrors the bifurcated adjudication process of *United States v. U.S. Steel Corp.,* 520 F.2d 1043 (5th Cir. 1976). In that case, the Fifth Circuit, "in an effort to relieve (the) tension between the management difficulties (of) claimants and Title VII's policy of compensation for discrimination-caused economic injuries," established a two-stage approach for deciding class actions in which back pay is sought. In Stage I, the class has to establish a *prima facie* case of employment discrimination. Once the class has proven the *prima facie* case of discrimination, then there is a presumptive entitlement in Stage II to present individual back pay claims. The company argues in the case before us that the settlement agreement in effect places the class members at Stage II of the Title VII class action adjudication. In its view, this "benefit" is sufficient to render the Settlement Agreement fair and equitable. But under the settlement agreement at issue here, the claimants receive no presumptive entitlement to relief. Therefore we cannot conclude that a *U. S. Steel*-type procedure was set up here.

In addition, the claimants in *U. S. Steel* were not required to meet evidentiary requirements more stringent than those established in *McDonnell Douglas.* Under the settlement before us, the class members are required to file six and in some cases seven part claims.[6] The class members then bear the initial burden of proving that they have been discriminated against because of their

---

6. Under the Agreement, claimants have to specify (1) the particular training or promotion in which the class member was wrongfully denied; (2) the approximate date of the request for the training or promotion and the name of the person to whom the request was made; (3) the approximate date of denial, the name of the person who denied the request, and any reason given for the denial; (4) the name of the employee awarded the training or promotion in question, and the approximate date of the

award; (5) the claimant's basis for claiming that she was qualified for the training or promotion; and (6) the approximate amount of back pay and other relief sought. In addition, claimants from the Memphis office of the Delta Marketing Area who alleged discrimination in promotions would have to state that the position sought was vacant, and that the vacant position was at a higher level bracket than the claimant's position.

sex.[7] Thus, this procedure places an arguably greater burden on the claimants than is required under *McDonnell Douglas*. This is further reason why the settlement provisions here cannot be deemed equivalent to Stage II of the *U. S. Steel* procedure.

Kroger argues that additional "benefits" to the class members, such as the company's "no discrimination" agreement, the notice of management openings agreement, the agreement to schedule meetings to describe the management training program, and the agreement to promulgate a fair employment policy, nevertheless make the Settlement Agreement appropriate for court approval under Rule 23(e). We cannot agree. These provisions only require the company to do what the law generally requires absent evidence of sex discrimination. Simply stated, we see little, if anything, in the Settlement Agreement which benefits the members of the class. In fact any benefits to the class members pale in comparison to the awards provided the named plaintiffs and attorneys of record. As appellants correctly argue, the "preferred positions" of the named plaintiffs should have signaled the district court of potential inequities in this proposed settlement.

## V.

■ The final issue presented on appeal is whether the district court improperly denied plaintiffs-intervenors/appellants' motion to intervene. The appellants moved to intervene because the named plaintiffs were inadequately representing the other members of the class. They contend that the agreement of the named plaintiffs' to the final class redefinition and to the proposed Settlement Agreement, which included "preferred position" provisions, demonstrate the inadequacy of representation by the named plaintiffs. Since we agree that the Settlement Agreement approved by the court was strongly against the interests of the class members, we conclude that the district court erred in denying the appellants' motion to intervene. It is clear to this court that the named plaintiffs inadequately represented the interests of the other class members in negotiating the proposed settlement. Therefore, appellants participation in the proceedings is particularly necessary for a just resolution of the controversy. *See* 3B Moores Federal Practice ¶ 23, 73.[8]

## Conclusion

Because the Settlement Agreement reached by the parties is unfair and inequi-

---

**7.** The Agreement requires each claimant "to make an evidentiary showing that she was a member of the class as defined by the Court." Since the district court last defined the class as "all females who have been discriminated against on the basis of their sex within 180 days prior to the filing of a charge with the EEOC by the plaintiff Martha Frances Franks . . .", the claimants, under the Agreement, bear the initial burden of proving that they have been discriminated against because of their sex. Presumably the claimants meet their burden by making the six-part showing discussed in note 6.

While *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) requires that individual relief may be granted only on the basis of an individualized finding of discrimination, each member of a discriminated-against class is presumptively entitled to relief once a pattern or practice of discrimination has been shown. However, the six-part showing required by the Agreement goes beyond what is necessary under *McDonnell Douglas* to support a finding of individualized discrimination. *See Grano v. Dept. of Development, supra*. For example, under *McDonnell*

*Douglas* a plaintiff has to show that her application was turned down, but under the Agreement a claimant must also state the approximate date of the denial, the name of the person who denied the request, and any reason given for the denial. Therefore, we believe that the revised Settlement Agreement created more stringent evidentiary requirements for proving individualized discrimination than is actually required by the case law.

**8.** *See also* The Advisory Committee Note to the 1966 Amendment of Rule 24(a), which states that:

[A] class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as a general rule, be entitled to intervene in the action.

table, we cannot affirm the district court's approval of the agreement. Indeed we believe that the district court's characterization of the initial Settlement Agreement as a "mere postponement of disputed issues" in which the claims of most of the class members would be subjected to more stringent standards is also applicable to the agreement which was ultimately approved by the court.

Accordingly the judgment of the district court is reversed, and remanded for proceedings consistent with this opinion.

MERRITT, Circuit Judge, concurring.

I agree with the conclusion reached in Judge Keith's opinion that the case must be reversed because the settlement agreement is not in the best interest of the members of the class. Class members do not appear to receive significant benefits from the settlement agreement between the defendant and the named plaintiffs. The settlement agreement, though somewhat vague, appears to conclude that no element of discrimination has been established for the benefit of class members, although at the same time one of the named plaintiffs is scheduled to receive $10,000 in damages. The briefs for both sides agree that the settlement agreement does not establish a prima facie case of discrimination or any other element of the cause of action stated in the complaint. For example, appellee states at page 23 of its brief that class members can recover in separate proceedings only "if discrimination in their individual cases is established."

My concern here is the same as that expressed in Judge Keith's opinion. The named plaintiffs and the defendant have simply settled the case by making individual incentive payments to the named plaintiffs and the class lawyers without any substantial benefits to the class. The relief provided by the settlement agreement does not treat the named plaintiffs and the class members equally. We should not allow a class action device to be used as a hammer at the head of the defendant for the purpose of extracting benefits for named plaintiffs at the expense of members of the class. That appears to be what has occurred here.

The portion of the Court's opinion with which I disagree is Section II concerning notice. This is a class action asking for an award of damages. The settlement agreement purports to cut off any further individual causes of action that members of the class may have arising out of the same subject matter, other than the remedy proposed in the settlement. Failure to follow the complex procedure outlined in the settlement terminates all other claims in any other forum. Before the rights of class members are so terminated, a careful effort should be made to identify potential class members, and they should receive personal notice by mail. If it is impossible to so identify such potential class members, the personal notice by mail should be given to all female employees of the defendant in the designated marketing area, and former employees, who could have requested a promotion during the requisite time. If for some reason it is impossible to provide a notice of this kind to the relevant class of employees of only one employer in a relatively small region of the nation, then I do not believe the case is appropriate for class action treatment.

GUY, District Judge, concurring in part and dissenting in part.

I concur in Sections I and III of Judge Keith's opinion but, for the reasons hereinafter set forth, I am unable to concur with Sections IV and V.

If the court's construction of the settlement agreement entered in this case is correct, I then find the opinion to be well reasoned. However, I am unable to accept the court's construction of the settlement agreement. The majority opinion states:

> It is clear to us that under the individual claims procedure provided for in the agreement the members of the class are no better off than if they had brought their actions individually. In fact, appellants' contention that they are actually in a worse position under the settlement

than they would have been if they had brought individual Title VII cases has merit.

The above conclusion is predicated upon the fact that the majority concludes that class members are still left with the burden of proving that they have been specifically discriminated against by the company. In my opinion neither the record in this case nor the settlement agreement itself dictates this conclusion.

The record discloses that this settlement agreement ultimately entered was not the first or only settlement agreement presented to the court for consideration. An earlier settlement agreement was proposed, notices were sent out, and a hearing was held to consider objections. As a result of objections at that hearing, the district court declined to approve the proposed settlement agreement. The court noted that "the joint proposal is not a settlement but a mere postponement of disputed issues in this case and that the rights of the claimants which are postponed will be subjected to more stringent requirements if the settlement is approved." Based upon this finding, the court rescinded a previous order which had granted a joint motion for class redefinition and then proceeded to once again redefine the class. The district court also authorized additional discovery and, upon completion of such discovery, again considered a joint motion seeking approval of a settlement agreement.

The settlement agreement which the court rejected suffered from the exact deficiency which this court now finds in the settlement agreement that was entered. Given the fact that the record reflects that the district judge was clearly aware of the problem of placing a greater burden on the class than required by law, I am simply unable to interpret the settlement agreement ultimately approved by the court in a manner which would assess to it this same deficiency. Since I interpret the settlement agreement to have defined the class that was the victim of the discriminatory treatment, I do not find it an impermissible burden to require individual claimants to specify (1) the particular training or promotion to which the class member claimed to have been wrongfully denied; (2) the approximate date of the request for the training or promotion and the name of the persons to whom the request was made; (3) the approximate date of denial, the name of the person who denied the request, and any reasons given for the denial; (4) the name of the employee awarded the training or promotion in question and the approximate date of the award; (5) the class member's basis for claiming that she was qualified for the training or promotion in question; and (6) the approximate amount of back pay or other relief sought. These requirements are consistent with the holdings of *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), which teaches that individual relief may be granted only on the basis of individual findings of discrimination. The settlement agreement entered establishes the presumptive entitlement to relief for the individual class members and this does not offend the decision in *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Since I would interpret the settlement agreement entered by the court to have defined a class that *was* discriminated against, I find that it is unnecessary to even consider the *prima facie* case standards set forth in *McDonnell-Douglas* since the settlement agreement entered takes the class defined beyond the *prima facie* case point. The procedures set forth in the settlement agreement for the resolution of individual claims are consistent with the bifurcated adjudication process approved by the Fifth Circuit in *United States v. U. S. Steel Corp.*, 520 F.2d 1043 (5th Cir. 1976). The conclusion that an individual is a member of a class that has been discriminated against does not carry with it automatic entitlement to relief. The procedures set forth for proof of individual entitlement in this settlement agreement are extremely detailed and set forth an easy to follow blueprint for a claimant. It is ironic that the effort to spell out in detail the procedures for individual claimants now becomes the impediment upon which this settlement agreement founders.

I also feel the majority is being unduly influenced by the "upfront" relief and attorney fees awarded to the named plaintiffs

and their counsel. It is a fact of life in any class action that is settled that the named plaintiffs and the attorneys will generally receive benefits prior to the rest of the class as part of the settlement agreement. Rather than viewing this as some type of a "sweetheart deal," however, I think it can equally well be viewed as setting the pattern for the type of relief that is now available to the other members of the class. If, in fact, the named plaintiffs and their attorneys have been amply compensated, then this serves as a guide to the Kroger Company, the magistrate, and ultimately the district judge as to what treatment should ultimately be accorded the individual class members who establish their entitlement to relief.

Accordingly, I also find that the class was adequately represented by the named plaintiffs and would sustain the district court in its decision to deny the appellants' motion to intervene.