Kathy HAINEY, et al., Plaintiffs,

v.

Dr. Carl PARROTT, Jr.,
et al., Defendants.

No. 1:02–CV–733.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 20, 2007.

John Henry Metz, Cincinnati, OH, for Plaintiffs.

David Todd Stevenson, Stephen Kinnear Shaw, Pamela J. Sears, Cincinnati, OH, for Defendants.

Marlene Penny Manes, Cincinnati, OH, pro se.

## ORDER APPROVING CLASS ACTION SETTLEMENT

SANDRA S. BECKWITH, Chief United States District Judge.

This matter is before the Court on the parties' joint motion to approve class action settlement (Doc. No. 50). For the reasons that follow, the parties' motion to approve the class action settlement is well-taken and is **GRANTED.**

## I. *Procedural History*

In October 2002, Kathy Hainey and four other named plaintiffs filed this lawsuit on behalf of themselves and a potential class of similarly-situated persons against Dr. Carl Parrott, then the Hamilton County Coroner, and the Hamilton County Board of County Commissioners, challenging the constitutionality of certain practices of the Coroner's Office. Specifically, Plaintiffs alleged that the Coroner's practice of retaining certain body parts and/or organs of their decedents for forensic examination, and then disposing of these body parts without notice and an opportunity to reclaim the body parts for burial or other disposition according to their wishes, violated their right to due process under the United States Constitution. Plaintiffs filed this lawsuit pursuant to 42 U.S.C. § 1983. Plaintiffs sued Dr. Parrott in both his individual and official capacities.

On August 3, 2004, on motion of the Plaintiffs, the Court certified a class of plaintiffs consisting of:

> [A]ll beneficiaries and next-of-kin of decedents who have had their decedent's body parts and/or organs removed and retained by defendants without consent and/or in reckless disregard of whether there was any objection or refusal by said next-of-kin to allow such procedure and taking to occur.

Doc. No. 20, at 12.

The case proceeded through discovery. At the close of discovery, the parties filed cross-motions for summary judgment. Doc. Nos. 31 & 35. The primary issues raised in the parties' motions were: 1) whether Plaintiffs had a constitutionally protectable interest in their decedents' body parts; 2) whether the Defendants were entitled to Eleventh Amendment sovereign immunity; 3) whether Dr. Parrott, in his individual capacity, was entitled to qualified immunity from suit; and 4)

whether Dr. Parrott, in his individual capacity, was entitled to absolute quasi-judicial immunity.

On September 28, 2005, the Court issued an order (Doc. No. 46) granting Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment. In summary, relying principally on *Brotherton v. Cleveland*, 173 F.3d 552 (6th Cir.1999), the Court found that Plaintiffs have a constitutionally protected interest in their decedents' body parts or organs and that they were entitled to notice and an opportunity to reclaim the body parts or organs before the Coroner's Office disposed of them. The Court further ruled that Defendants violated Plaintiffs' constitutional rights by disposing of their decedents' body parts without notice.

On the immunity issues, the Court ruled that Defendants were not entitled to Eleventh Amendment sovereign immunity because state law did not dictate the manner in which the Coroner disposed of bodies in his possession nor did it prohibit the Coroner from giving notice of his intent to dispose of the decedents' body parts. Additionally, the Court ruled, based on *Brotherton* as well, that Dr. Parrott was not entitled to qualified immunity because a reasonable coroner would have known that Plaintiffs had a constitutionally protected interest in their decedents' body parts and that disposing of these body parts without prior notice to the Plaintiffs would violate that interest. Finally, the Court ruled that Dr. Parrott was not entitled to quasi-judicial immunity because release of the body to the next-of-kin is purely an administrative task.

Defendants filed an immediate interlocutory appeal from the Court's denial of sovereign immunity. Doc. No. 47. While Defendants' appeal was before the Sixth Circuit, the parties reached the settlement now pending approval by this Court. On June 1, 2006, the parties filed a motion to preliminarily approve the proposed settlement with this Court. The Court preliminarily approved settlement on June 6, 2006. On June 23, 2006, the Sixth Circuit remanded the case for further proceedings.

On June 1, 2007, individual notices of the proposed settlement were sent to 835 class members. In addition, notice of the proposed settlement was published six times over a three week period in *The Cincinnati Enquirer, The Cincinnati Post, The Kentucky Enquirer,* and *The Kentucky Post* and three times over a three week period in *The Cincinnati Herald.* Doc. No. 79 (Special Master's Report). The deadline for class members to opt out of the settlement and to file written objections to the settlement was August 6, 2007. The Court received five timely-filed written objections to the settlement from class members. Doc. Nos. 70, 74–77. On September 10, 2007, the Court held a fairness hearing during which objectors were given an opportunity to state their objections to the settlement.

## II. *The Settlement Agreement*

The terms of the proposed settlement agreement may be summarized as follows:

1. The Defendants will create a settlement fund of $6,000,000 for the benefit of the class members. All claims, administrative expenses and attorney's fees are to be paid from the settlement fund. The fund shall be closed upon payment of all claims, expenses, and fees. Defendants in fact established the settlement fund on November 2, 2006. Doc. No. 55.

2. The named Plaintiffs are eligible for an incentive award of $50,000 each. According to the Special Master's report, four named Plaintiffs are eli-

gible for an incentive award. Class counsel may apply for an award of attorney's fees not to exceed one-third the value of the fund.

3. Upon preliminary approval of the settlement by the Court, a special master is to be appointed to administrate the settlement, including sending notice to class members and paying claims.

4. Defendants waive the statute of limitations for autopsies conducted from January 19, 1991 through October 8, 2000 for claims for deprivation of property and liberty interests. Defendants do not waive the statute of limitations for emotional distress claims.

5. Defendants will enter into a consent decree providing that notice will be provided to persons claiming a decedent from the morgue that an organ is being retained for examination, the identity of the organ, and how the organ can be claimed when the examination is complete.

6. The class members will release the Defendants from any further liability.

### III. *The Proposed Settlement Should Be Approved*

■ Rule 23(e) of the Federal Rules of Civil Procedure controls settlement of class action lawsuits. According to Rule 23, the trial court must approve all class action settlements. Fed.R.Civ.P. 23(e)(1)(A). Before approving the settlement, the Court must direct reasonable notice of the settlement to the class, hold a hearing, and make a finding that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(e)(1)(B) & (C). The trial court may only accept or reject the settlement as agreed to by the parties; the court has no authority to modify the terms of the agreement. *Brown v. County of Genesee*, 872 F.2d 169, 173 (6th Cir.1989).

■ In this case, reasonable notice of the settlement has been directed to the class members and the Court has held a fairness hearing. Therefore, the Court's remaining task is to determine whether the settlement is fair, reasonable, and adequate. In assessing whether a class action settlement is fair, reasonable, and adequate, the trial court should consider the following factors: 1) the risk of fraud or collusion; 2) the complexity, expense and likely duration of the litigation; 3) the amount of discovery engaged in by the parties; 4) the likelihood of success on the merits; 5) the opinions of class counsel and class representatives; 6) the reaction of absent class members; and 7) the public interest. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983).

### A. *The Risk of Fraud or Collusion*

■ In this case, the parties reached their settlement with the assistance of the Chief Mediator for the Sixth Circuit Court of Appeals. The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties. *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D.Cal.2005); *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 352 (E.D.N.Y.2000). In addition, during the fairness hearing, counsel for both parties confirmed that the negotiations were hard fought.

Accordingly, this factor weighs in favor of approving the settlement.

### B. *The Complexity, Expense and Likely Duration of the Litigation*

■ There was little or no factual dispute concerning the nature of the unconsti-

tutional policy or practice at issue in this case. Although they disputed the unconstitutionality of the practice, the Defendants admitted that the Coroner's Office retained organs for forensic examination and then disposed of them without prior notice to the class members. Nevertheless, the legal issues surrounding the claims and defenses, although based on *Brotherton*, were unique given the coroner's undeniably broad authority to assume and maintain control of the decedent for the purpose of determining the cause of death. The case was in its third year when this Court ruled on the cross-motions for summary judgment. Prosecution of the Defendants' interlocutory appeal to a conclusion likely would have delayed resolution of the case for two more years.

At that point, assuming the Court of Appeals affirmed the decision of this Court, the proceedings could have become quite protracted. The class period in this case covers an eleven year period and there are approximately 1,000 class members. More likely than not, Defendants would have asserted the statute of limitations against class members on an individual basis. This probably would have necessitated either holding many individual hearings to determine when the class member knew or should have known of his or her claim against the Defendants or decertifying the class because of the proliferation of individual issues on the statute of limitations and/or damages. Moreover, there is a very real possibility that the outcome of these individual hearings would generate another appeal with its attendant delay. In any case, the proceedings would have become time consuming and unwieldy to manage and complete resolution of the case likely would have taken several more years.

Therefore, this factor weighs in favor of approving the proposed settlement.

## C. *The Amount of Discovery Completed*

■ In this case, the parties completed discovery and the case proceeded through the summary judgment stage. The parties, therefore, had a full opportunity to assess the strengths and potential weaknesses of their cases before entering into the settlement agreement. This factor weighs in favor of approving the proposed settlement. *See Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3rd Cir. 1993)("[P]ost-discovery settlements are more likely to reflect the true value of the claim and be fair.").

## D. *The Likelihood Success on the Merits*

■ In this case, Plaintiffs obviously succeeded on the merits, at least through the district court level, of establishing a constitutionally protected interest in their decedents' organs. However, that is not the end of the question. As stated above, Defendants had several grounds for avoiding liability pending on appeal, including whether they were entitled to complete immunity from suit. Moreover, although this lawsuit was based on *Brotherton*, in the particular context of this case, the constitutional question was one of first impression. The uncertainty of outcome on questions of first impression weighs in favor of approving the settlement. *Rendler v. Gambone Bros. Dev. Co.*, No. CIV A 97–1156, 1999 WL 252395, at *5 (E.D.Pa. Apr. 27, 1999). The Court notes that in a follow-up class action lawsuit against the remaining 87 counties in Ohio over the practice at issue, Judge Dlott has certified the question to the Supreme Court of Ohio whether next of kin have any protected interest in their decedent's organs which have been retained by the coroner's office for forensic examination and testing. *See Albrecht v. Treon*, Case No. 1:06–CV–274, 2007 WL 777864 (S.D.Ohio March 12,

2007). Thus, there is a possibility that further prolonging this case would have resulted in a determination that Plaintiffs have no protected interest in their decedents' organs. *See Arnett v. Myers,* 281 F.3d 552, 565 (6th Cir.2002)("State supreme court decisions are controlling authority for ... determinations [whether plaintiff has a property interest protected by the Fourteenth Amendment].").

Additionally, as discussed above, although Plaintiffs prevailed in terms of establishing a constitutionally protected interest, there were still questions regarding whether the claims of individual class members are barred by the statute of limitations. Given the breadth of the class period, there was a possibility that a number class members would be completely foreclosed from recovering damages and for those individuals there was no likelihood of success on the merits. Defendants' waiver of the statute of limitations on property damage claims ensures some measure of recovery for each class member.

Accordingly, the Court concludes that this factor weights in favor of approving the settlement.

### E. *The Opinions of Class Counsel and Class Representatives*

▇ In this case, class counsel is Mr. John H. Metz, Esq. Mr. Metz is an experienced and able class action litigator. Mr. Metz litigated the controlling *Brotherton* case for over 11 years and brought that case to a successful conclusion for those class members. Thus, because of his prior experience litigating *Brotherton* case, Mr. Metz's opinion that the proposed settlement is fair, reasonable, and adequate is entitled to considerable weight. *Turner v. Murphy Oil USA, Inc.,* 472 F.Supp.2d 830, 852 (E.D.La.2007); *In re BankAmerica Corp. Sec. Lit.,* 210 F.R.D. 694, 702 (E.D.Mo.2002). Additionally, during the fairness hearing, Class Representative Kathy Hainey requested that the settlement be approved.

Accordingly, this factor weighs in favor of approving the proposed settlement.

### F. *The Reaction of Absent Class Members*

▇ As stated above, the Court received five written objections to the proposed settlement agreement. The Court will address the substance of those objections below. Generally, however, a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate. *Whitford v. First Nationwide Bank,* 147 F.R.D. 135, 141 (W.D.Ky.1992). Moreover, the trial court should not withhold approval of the settlement merely because some class members object to it. *Id.*

Before it turns to the written objections, however, the Court addresses some of the oral objections and concerns voiced by class members during the fairness hearing. Many class members were upset that the Coroner decided that an autopsy of their decedent was necessary because they believed that the cause of death was obvious or that retention of organs was unnecessary. Others were upset that the Coroner, Dr. Parrott, is not going to be subjected to criminal sanctions and/or loss of his medical license. Some class members were concerned that the Coroner's Office retained other body parts or organs of which they are still unaware or that the Coroner's Office was using the retained organs for experimentation or research. Still others believed that the settlement fund is inadequate given that Hamilton County settled another class action lawsuit involving the Coroner's Office for more money.

In response to the objections and concerns of those class members, the Court, while mindful and respectful of these

questions, can only emphasize the limited scope of this lawsuit. This lawsuit did not challenge the Coroner's discretion to determine whether and how to perform an autopsy. Indeed, Plaintiffs specifically stated that they were not challenging the Coroner's authority to conduct an autopsy. Doc. No. 43, at 1. The narrow issue in this case was the Coroner's failure to provide notice of retention of organs.

In terms of the lack of imposition of criminal sanctions against Dr. Parrott, this is a civil suit in which such penalties are not available. Moreover, and it bears repeating, there is no evidence in this case that Dr. Parrott, or any other member of the Coroner's Office, committed any illegal or medically unethical act with respect to Plaintiffs' decedents. Therefore, to the Court's knowledge, there is no basis for imposing criminal or professional sanctions against Dr. Parrott or the staff of the Coroner's Office as a result of their actions in this case.

The Court further understands that the class members are mistrustful of the Hamilton County Coroner's Office and have concerns whether there has been other misconduct concerning their decedents. Previous administrations admittedly have done little to foster public support for and confidence in the Coroner's Office. Nevertheless, the class members should find some comfort in knowing that a new Coroner has been elected and the medical staff at the Coroner's Office has turned over since the events of this case. However, insofar as this case is concerned, the evidence shows that the Coroner treated the decedents in as respectful a manner as medical science allows. The decedents' organs and body parts were not used for research or experimentation. References in the record to "neuropathology conferences" were routine internal meetings of the assistant coroners which were held to assist in determining the cause of death. They were not, as the term might suggest, outside professional educational conferences in which the decedent's brain was presented to an assemblage of pathologists as a case study. Finally, the consent decree that is included as a term of the settlement agreement should reassure class members that the policy which has caused them such grief will not hurt others.

Class members were also upset that the amount of this settlement is for less than the well-publicized "Morgue-Photograph" Case, which also involves the Hamilton County Coroner's Office. *See Morgue Suit Settled,* THE CINCINNATI ENQUIRER, August 22, 2007 (available at http://news. enquirer.com/apps/pbcs.dll/article?AID=/ 20070822/NEWS01/708220394/--1/all) (visited September 12, 2007). Each case, however, has its own facts and a settlement reached in one case is not necessarily an accurate gauge of the adequacy of a settlement in another case. While the Court is not conversant with all of the facts of the Morgue Photograph Case, from what has been published, the conduct at issue there was far more egregious than the conduct in this case. The conduct in *Brotherton* was more egregious as well. In this case, however, as the Court noted in its summary judgment order, it appears that the Coroner's actions were well-intentioned, if ultimately wrongful. *See* Doc. No. 46, at 12. The differences in conduct justify differences between the settlements.

The Court turns now to the specific written objections of the class members.

Class members James and Jane Griffith raise several objections to the settlement agreement. They first object that payment of emotional distress damages is limited to persons who claimed the decedent for burial or cremation. The Griffiths argue that this provision discriminates

against persons who may have suffered emotional distress but whose decedents were delivered directly to a funeral home from the morgue. The Griffiths, however, apparently misapprehend the meaning of the clause concerning emotional distress damages. Nothing in this clause requires the next-of-kin to literally claim the decedent at the morgue to be eligible for an emotional distress award. Indeed, the clause states that any "next-of-kin" is eligible for an emotional distress award. In any event, this objection is moot. As explained at the fairness hearing, the parties contemplate that under the forthcoming proposed plan of distribution, the emotional distress component of the settlement would be available to all class members and would provide several group grief counseling sessions with a qualified therapist in lieu of a cash distribution. The Griffiths further object that Defendants are not waiving the statute of limitations as to emotional distress claims. This objection is moot for the reason just stated.

■ The Griffiths next object that the incentive awards for the class representatives are disproportionate to the likely recovery of the remainder of the class members. They estimate that after payment of attorney's fees and expenses, the payments to the class members may be as low as $3,750 each. The Griffiths also object that attorney's fees for class counsel are disproportionate to the damages likely to be paid to each class member.

■ The Sixth Circuit has stated that payment of incentive awards to class representatives may be appropriate in some cases, but so far has declined to specify the appropriate circumstances. *Hadix v. Johnson,* 322 F.3d 895, 897–98 (6th Cir. 2003). In this district, however, trial judges have approved incentive awards for class representatives after consideration of several factors, including their actions to protect the rights of the class members and whether those actions resulted in a substantial benefit to the class members, whether the class representative assumed any direct or indirect financial risk, and the amount of time and effort spent pursuing the litigation. *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250 (S.D.Ohio 1991). In this case, the settlement agreement only provides that the class representatives are eligible for an incentive award. Nevertheless, the settlement agreement clearly states that the Court will determine the amount of any incentive award. The parties have recommended a $50,000 incentive award for each class representatives. This recommendation, however, is clearly not binding on the Court. The mere fact, however, that the settlement agreement provides for payment of incentive awards to class representatives does not render the proposed settlement agreement unfair, unreasonable, or inadequate.

■ In a common fund case, the trial court's award of attorney's fees must be reasonable under the circumstances. *Rawlings v. Prudential–Bache Prop., Inc.,* 9 F.3d 513, 516 (6th Cir.1993). Class counsel is entitled to be fairly compensated for the work done and the results achieved. *Id.* The trial court has the discretion to use the lodestar method (the reasonable number of hours expended multiplied by a reasonable hourly rate) or the percentage of fund method. *Id.* Although each method has its advantages, the *Rawlings* Court seemingly expressed a preference for the percentage of the fund method:

> Of course, each method has its respective advantages and drawbacks. The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and

it encourages early settlement, which avoids protracted litigation. However, a percentage award may also provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested.

The lodestar method's listing of hours spent and rates charged provides greater accountability. In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value of continuing work on the case, since the method is tied to hours and rates, and not simply a percentage of the resulting recovery.

However, the lodestar method has been criticized for being too time-consuming of scarce judicial resources. District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement.

*Id.* at 516–17. Courts have also employed the percentage of the fund method, and have cross-checked that fee against the lodestar amount of fees. *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996).

Here, class counsel has submitted a brief requesting attorney's fees of one-third of the common fund, equivalent to his contingency fee agreement with the class representatives. In *In re Telectronics Pacing Sys., Inc.,* 137 F.Supp.2d 1029 (S.D.Ohio 2001), Judge Spiegel observed that in common fund cases attorney's fees

between 10% to 30% of the fund are generally considered reasonable. *Id.* at 1042; *see also Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1272 (D.C.Cir.1993) ("[A] review of similar cases reveals that a majority of common fund class action fee awards fall between twenty and thirty percent".); MANUAL FOR COMPLEX LITIGATION § 14.121, at 188 (4th ed. 2004) ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."). Thus, in this case, class counsel's request for an award of attorney's fees equaling 33% of the common fund, while slightly higher than the typical fee award, is not unreasonable per se. Certainly counsel's request alone is insufficient for the Court to find that the proposed settlement should not be approved. The Court does, however, believe that it would be prudent, and in the best interests of the class, to cross-check counsel's fee petition against the lodestar calculation. Accordingly, class counsel is directed to file a lodestar fee calculation within 30 days of the date of this order.

Finally, the Griffiths suggest that the Court establish a second opt-out period once final fees and costs are calculated and a better estimate of each class member's award can be determined. Rule 23(e)(3) of the Federal Rules of Civil Procedure permits the trial court to establish a second opt-out period for class members. Although the Advisory Committee Notes to Rule 23 indicate that many factors may influence the trial court's decision to allow a second opt-out period, Rule 23(e)(3) mainly appears to be intended for use when the terms of the settlement agreement change after the expiration of the initial opt-out period. *See* Fed.R.Civ.P. 23, Advisory Committee Notes to 2003 Amendments ("Many factors may influence the court's decision. Among these are changes in the information available to

class members since expiration of the first opportunity to request exclusion[.]"). In this case, however, a second opt-out period is not warranted. The terms of the settlement agreement have not changed appreciably since notice of the settlement was provided and the expiration of the original opt-out period. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2nd Cir.2006)("An additional opt-out period is not required with every shift in the marginal attractiveness of the settlement; there is always the chance that a better deal will come along for those who opt out."). The class members had enough information at that time to make a reasoned decision whether or not to opt out of the settlement. Furthermore, establishing a second opt-out period would not be in the best interests of the class because it would result in additional administrative costs, which in turn reduces the amount available for distribution. The Court concludes that providing a second opt-out period is not required and that the unavailability of a second opt-out period does not necessitate rejecting the settlement.

The written objections of class members Patricia Cobb, Catrice and Antonio McGlothin, and Yolanda Sims echo the oral objections raised during the fairness hearing. Each objector is concerned about the size of the common fund, particularly in comparison with other class action settlements involving the Coroner's Office, the amount of attorney's fees requested, provisions for emotional distress compensation, the availability or lack thereof of additional civil and criminal penalties against the Coroner's Office, and changes in the practices and policies at the Coroner's Office. The Court has addressed each of these concerns in the course of its analysis of the proposed settlement. While these are legitimate and important concerns, they do not lead the Court to conclude that the proposed settlement agreement is unfair, unreasonable, or inadequate. As the Court has explained, there are substantial differences between the facts of this case and others involving the Coroner's Office. The attorney's fees requested, while yet to be approved, are not per se unreasonable. There are no additional civil or criminal penalties or remedies against the Defendants that are available to the class. Finally, the Coroner's Office has amended the wrongful policy.

In summary, despite the oral and written objections of some of the class members, the Court finds that this factor weighs in favor of approving the settlement.

### G. *The Public Interest*

The final factor for consideration is the public interest in approving the settlement. Public policy generally favors settlement of class action lawsuits. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 143 (W.D.Ky.1992). The settlement brings closure to a matter that has been pending final resolution for nearly five years. The settlement brings relief to a substantial number of claimants who were affected by this policy over a very long period of time. The settlement avoids further protracting the case through litigation of individual issues, such as the applicability of the statute of limitations to individual claimants. Finally, the consent decree brings about important policy changes in a public agency in need of reform. In short, the public interest weighs in favor of approving the proposed settlement.

### *Conclusion*

In conclusion, the Court finds that each of the factors for consideration in determining whether to approve a class action settlement weighs in favor of approving the settlement proposed in this case. Pursuant to Rule 23(e)(1)(C) of the Federal

Rules of Civil Procedure, the Court finds that the proposed settlement is fair, reasonable, and adequate. Accordingly, the settlement is hereby **APPROVED.** In accordance with this order, class counsel shall submit to the Court a lodestar fee calculation within 30 days of the date of this order. Class counsel shall by the same deadline file a memorandum in support of incentive awards for the class representatives.

**IT IS SO ORDERED**