**John M. STINSON, on behalf of himself and others similarly situated, Plaintiff,**

v.

**DELTA MANAGEMENT ASSOCIATES, INC., Defendant.**

No. 1:13–cv–238.

United States District Court, S.D. Ohio, Western Division.

Signed Aug. 8, 2014.

---

162

Ronald Lee Burdge, Burdge Law Office, Dayton, OH, Brian Lewis Bromberg, Bromberg Law Office, P.C., New York, NY, Thomas R. Breeden, Thomas R. Breeden, P.C., Manassas, VA, for Plaintiff.

Jeffrey Charles Turner, Surdk Dowd & Turner Co. LPA, David B. Shaver, Miamisburg, OH, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 25)

TIMOTHY S. BLACK, District Judge.

This civil action is before the Court on Plaintiff's motion for final approval of class action settlement. (Doc. 25). The Court held a fairness hearing on July 29, 2014.

## I. BACKGROUND

Plaintiff filed a class action complaint against Defendant on April 10, 2013 alleging claims against Defendant under the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692, *et seq.* Specifically, Plaintiff alleged Defendant violated the FDCPA by sending him a collection letter containing false or misleading statements regarding the federal student loan rehabilitation program. (Doc. 1). Plaintiff filed an amended motion for class certification and appointment of class counsel on October 3, 2013. (Doc. 16). After extensive settlement negotiations, the parties jointly moved for preliminary approval of a class action settlement on March 17, 2014. (Doc. 22).

The Court granted preliminary approval of the class action settlement on April 15, 2014. (Doc. 24). The Court preliminarily certified a Rule 23(b)(3) class consisting of all Ohio residents who were sent the collection letters at issue between April 10, 2012 and October 3, 2013.[1] (*Id.* at 2). The Court found that the class preliminarily satisfied the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representatives) and the requirements of Rule 23(b)(3) (predominance and superiority). (*Id.* at 2–3). The Court also (1) preliminarily certified Plaintiff as the class representative; (2) preliminarily certified Thomas R. Breeden of Thomas R. Breeden, P.C., Brian L. Bromberg of Bromberg Law Office, P.C., and Ronald L. Burdge of Burdge Law Office Co. LPA as class counsel; (3) preliminarily approved the class settlement; (4) approved of the parties' proposed settlement notice; (5) approved of the parties' proposed class action settlement procedure; and (6) scheduled a fairness hearing after the close of the settlement notice period. (*Id.* at 2–6).

Following the Court's preliminary approval order, Defendant retained a class action administration company to mail the Court-approved notice to all 186 class members at their last-known address. (Doc. 26). Of the 186 notices mailed to class members, 14 were returned as undeliverable with no forwarding address and no objections or requests for exclusion were received. (*Id.* at ¶ 9).

## II. NOTICE

█ The content of the settlement notice fully complies with due process and the provisions of Fed.R.Civ.P. 23(c)(2)(B) and (e). (Doc. 22, Ex. C). Defendant retained a class action administration company to provide the notice by first class direct mail to the last-known address of all class members as reflected in Defendant's business records. The company updated the class members' addresses through the Coding Accuracy Support System and National Change of Address Database. (Doc. 26 at ¶ 4). A total of 14 notices were returned as undeliverable, consisting of 7.5% of class members. (*Id.* at ¶ 9). The Court finds that the parties have satisfied the requirements of Fed.R.Civ.P. 23(c)(2)(B) and due process, and that the settlement notice here constituted the best notice practicable under the circumstances.[2]

## III. CLASS SETTLEMENT

The parties' propose a settlement in which $65,000 in statutory damages is distributed *pro rata* to the 172 class members, or $377.90 each. The parties also propose a $3,000 payment to Plaintiff for his individual claim and as a class representative award.

Pursuant to the FDCPA, the Court may award actual and statutory damages. 15 U.S.C. § 1692k(a). In a class action, statutory damages are capped at $1,000 for each named plaintiff and the lesser of $500,000 or

---

1. The parties determined that there are 186 class members plus the named Plaintiff. (Doc. 25 at 2).

2. Defendant also provided timely notice of the proposed settlement to the appropriate federal and state officials. *See* 28 U.S.C. § 1715.

1% of the Defendant's net worth for all class members. *Id.* § 1692k(a)(2)(B). The parties agree that the $65,000 settlement represents approximately 1% of Defendant's net worth. (Doc. 25 at 3).

A Court determining the amount of liability in a class action is required to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2). A debt collector is absolved of liability if it shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error. *Id.* § 1692k(c).

■ Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11–cv1061, 2013 WL 2295880, at *4 (S.D.Ohio May 24, 2013) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007)). In the Sixth Circuit, district courts consider seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.

*UAW*, 497 F.3d at 631. As set forth below, the settlement clearly meets the standard for final settlement approval.

### A. The Risk of Fraud or Collusion

■ The settlement was the result of arm's-length negotiations conducted by experienced counsel for both parties. The parties requested several extensions to the briefing schedule on Plaintiff's motion for class certification to continue negotiations. Notably, the parties negotiated and reached the settlement independent of attorney's fees and costs. Accordingly, the Court concludes that the settlement was reached in good faith and does not present the risk of fraud or collusion.

### B. The Complexity, Expense, and Likely Duration of the Litigation

■ "The Fair Debt Collection Practices Act is a set of complex laws with many components." *Wess v. Storey*, 2:08–cv–623, 2011 WL 1463609, at *4 (S.D.Ohio Apr. 14, 2011). Although the parties reached the settlement in the early stages of litigation, Plaintiff's comprehensive motion for class certification and supporting exhibits reflected the complexity of the case and permitted counsel for both sides to evaluate their respective positions. The parties would likely expend significant time and money litigating this case through class certification, dispositive motions, trial, and appeal. Moreover, expensive litigation could reduce the potential statutory damages available to the class because the maximum award is tied to Defendant's net worth. *See Brent v. Midland Funding, LLC*, No. 3:11–cv–1332, 2011 WL 3862363, at *16 (N.D.Ohio Sept. 1, 2011). This factor favors approval.

### C. The Amount of Discovery Engaged in By the Parties

The parties engaged in formal and informal discovery over the course of several months. The discovery largely focused on Defendant's net worth, which is particularly appropriate because it directly relates to the potential recovery. The nature of the violations alleged, letters containing false or misleading statements, and the experience of class counsel permitted them to weigh the strengths and weaknesses of the case. In these circumstances, the Court will "defer to the judgment of experienced trial counsel who have evaluated the strength of his case." *Wess*, 2011 WL 1463609, at *5.

### D. The Likelihood of Success on the Merits

■ The settlement provides relief to class members and eliminates the risks that the

parties would otherwise bear if this litigation were to continue on for more years. While Plaintiff believes that he would ultimately prevail on these issues, there is an inherent risk of litigation and trial. By agreeing to the settlement, these risks are eliminated and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever).

The settlement is close to the maximum statutory damages permitted by the FDCPA and even after success on the merits the Court has discretion in determining the amount of liability. *See Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, No. 3:11–cv–460, 2012 WL 1122892, at \*2 (S.D.Ohio Apr. 3, 2012) (awarding only $100 in statutory damages after entry of a default judgment because the "noncompliance admitted by virtue of default was not frequent, was not persistent and was not egregious"). The settlement saves the class members the expense and uncertainty of proving several elements to establish liability, and precludes Defendant from asserting the affirmative defense of bona fide error.

The likelihood of success on the merits is particularly unclear because there is no binding authority in the Sixth Circuit on the federal student loan rehabilitation program provisions at issue. Without a clear interpretation, the class could face a difficult task in proving that the letters contained false or misleading statements. Moreover, there is no established standard for determining the existence and amount of actual damages in the context of the federal student loan rehabilitation program. Finally, the Sixth Circuit has expressed concern that awarding statutory damages in the absence of actual damages is akin to imposing strict liability and instructed courts to guards against abuse of the FDCPA. *See Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513–14 (6th Cir.2007). Accordingly, the likelihood of success on the merits was not overwhelming and supports approving the settlement.

### E.  The Opinions of Class Counsel and Class Representatives

■ Class counsel has extensive experience in litigating consumer law cases, including three FDCPA cases involving violations of the same federal student loan rehabilitation program provisions at issue here. From this experience, class counsel believes that the class members will receive an unusually favorable settlement amount. Defendant was represented by experienced counsel who vigorously contested all liability. Accordingly, this factor weighs in favor of final approval.

### F.  The Reaction of Absent Class Members

■ The reaction of the class also supports approval. Of the 172 class members to receive notice, none objected or requested exclusion from the class or settlement. Class counsel received several calls from class members and all responded favorably to the terms of the settlement.

### G.  The Public Interest

■ Public policy generally favors settlement of class action lawsuits. *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D.Ohio 2007) (citing *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 143 (W.D.Ky.1992)). The settlement provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources. The settlement also serves the public interest because it promotes compliance with the FDCPA, which Congress enacted in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Accordingly, the Court concludes that this factor weighs in favor of approving the proposed settlement because the public interest is served by resolution of this action.

After considering the seven factors and the record as a whole, the Court is convinced that the settlement is fair, reasonable, and adequate.

### IV.  *Cy Pres* Beneficiaries

According to the Agreement, in the unlikely event that participating class members fail

to cash their settlement checks before the expiration date (ninety days from date of issuance), the first $5,000 in funds are to be donated to the National Consumer Law Center and any remaining amount distributed to the Ohio Legal Assistance Foundation. The Court approves the parties' agreed *cy pres* beneficiaries. *Kritzer v. Safelite Solutions, LLC*, No. 2:10–cv–729, 2012 WL 1945144, at *10 (S.D.Ohio May 30, 2012) (approving distribution of uncashed settlement checks to *cy pres* beneficiaries).

## V. CLASS REPRESENTATIVE AWARD

The Agreement contemplates payment of $3,000 to Plaintiff. The Court construes the first $1,000 to represent Plaintiff's statutory damages, 15 U.S.C. § 1692k(a)(2)(B)(i), and the remaining $2,000 as a class representative award. This award is consistent with the range of awards made in FDCPA cases. *See O'Connor v. AR Res., Inc.*, No. 3:08–cv1703, 2012 WL 12743 (D.Conn. Jan. 4, 2012) (approving a $2,000 class representative fee to the named plaintiff); *Garland v. Cohen & Krassner*, No. 08–cv–4626, 2011 WL 6010211, at *13 (E.D.N.Y. Nov. 29, 2011) (approving class representative award of $3,000 in FDCPA class action).

## VI. CONCLUSION

Having considered Plaintiff's motion for final approval of class action settlement, the supporting memoranda, the arguments made at the fairness hearing, and the record as a whole, and for good cause shown, the Court **ORDERS** as follows:

1. All capitalized terms used herein have the meanings defined herein and/or in the Agreement. (Doc. 22, Ex. 1).

2. The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto.

3. *CLASS MEMBERS*—Pursuant to Fed.R.Civ.P. 23(b)(3), the Lawsuit is hereby finally certified, for settlement purposes only, as a class action on behalf of the following class of plaintiffs (the "Ohio Class Members") with respect to the claims asserted in the Lawsuit:

All consumers residing in the State of Ohio to whom Delta mailed a letter in one of the forms attached to the Amended Complaint as Exhibits A or C, from April 10, 2012, to October 3, 2013, describing the Federal Student Loan Rehabilitation Program.

4. *CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT*—Pursuant to Fed.R.Civ.P. 23, the Court finally certifies Plaintiff as the Class Representative, and Thomas R. Breeden of Thomas R. Breeden, P.C., attorney Brian L. Bromberg of Bromberg Law Office, P.C., and attorney Ronald L. Burdge of Burdge Law Office Co. LPA, as Class Counsel.

5. *NOTICES*—Pursuant to the Court's Preliminary Approval Order, the approved class action notices were mailed to the Ohio Class Members. The form and method for notifying the Ohio Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order and satisfied the requirements of Fed.R.Civ.P. 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances. The Court finds that the proposed notices were clearly designed to advise the Ohio Class Members of their rights. Of the 186 notices mailed to class members, 14 were returned as undeliverable with no forwarding address.

6. *FINAL CLASS CERTIFICATION*— The Court finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Fed.R.Civ.P. 23, namely:

A. The Ohio Class Members are so numerous that joinder of all of them in the Lawsuit is impracticable;

B. There are questions of law and fact common to the Ohio Class Members, which predominate over any individual questions;

C. The claims of the Plaintiff are typical of the claims of the Ohio Class Members;

D. The Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all of the Ohio Class Members; and

E. Class treatment of these claims will be efficient and manageable, thereby

achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

7. The Court finds that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Ohio Class Members, especially in light of the benefits to the Ohio Class Members; the strength of the Plaintiff's case; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the class; and, the limited amount of any potential total recovery for the class.

8. *SETTLEMENT TERMS*—The Agreement (Doc. 22, Ex. 1), which shall be deemed incorporated herein, and the proposed settlement are finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court. The Parties are hereby directed to perform the terms of the Agreement.

9. *OBJECTIONS AND EXCLUSIONS*— The Ohio Class Members were given an opportunity to object to the settlement. No Ohio Class Member objected to the settlement. No Ohio Class Members requested exclusion.

10. This Order is binding on all 172 Ohio Class Members.

11. *RELEASE OF CLAIMS AND DISMISSAL OF LAWSUIT*—The Class Representative, Ohio Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims, except claims for attorney's fees, costs, and expenses, against any of the Released Parties, as set forth in the Agreement. Pursuant to the release contained in the Agreement, the Released Claims, except claims for attorney's fees, costs, and expenses, are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this order. The Parties agree, and the Court acknowledges, the Agreement and Release of Claims has no effect whatsoever on any potential Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, claims the putative class members may have against Delta. Furthermore, nothing contained herein shall impair or limit any right or cause of action by the class members to dispute the underlying debt or amount allegedly owed to Delta or its clients. Further, nothing herein shall be construed to release the Plaintiff, nor any class members, from liability on any collection account(s) owed to Delta or being collected from the Plaintiff, or class members, by Delta.

12. The filing deadlines for pleadings regarding recovery of attorney's fees and costs are as follows: Plaintiff's motion and verified supporting documentation August 26, 2014; memorandum contra September 16, 2014; and reply memorandum September 26, 2014.

13. The Lawsuit is hereby dismissed with prejudice except for the determination of the amount of the costs, expenses and attorney's fees to be awarded.

14. This order is not, and shall not be construed as, an admission by Delta of any liability or wrongdoing in this or in any other proceeding.

15. The Court expressly and explicitly retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Lawsuit and Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this order.

The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**